IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

DERIC LaVELLE MAY, # 209534,   :

  Plaintiff,        :

vs.           :  **CIVIL ACTION 15-211-KD-N**

BENNIE ANDREWS, et al.,    :

  Defendants.      :

## REPORT AND RECOMMENDATION

This § 1983 action, filed by an Alabama prison inmate proceeding pro se, was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4) for appropriate action.  When plaintiff filed the complaint, he also filed a motion to proceed without prepayment of fees instead of paying the $400 filing fee, which he is required to pay as a "three-striker," unless he meets the exception to 28 U.S.C. § 1915(g).  After reviewing plaintiff's complaint, it is recommended that this action be dismissed without prejudice pursuant to 28 U.S.C. § 1915(g).

**I.  Applicable Law.**

Section 1915(g) provides:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section [28 U.S.C. § 1915] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which

relief may be granted, unless the prisoner is under
imminent danger of serious physical injury.

The purpose of this section is to curb abusive prisoner litigation by requiring a prisoner

who has had three actions or appeals dismissed as meritless to pay the full filing fee when his

next action is filed.  Dupree v. Palmer, 284 F.3d 1234, 1236 (11th Cir. 2002).  "The only

exception to section 1915(g) is if the frequent filer prisoner is 'under imminent danger of

serious physical injury.'"  Rivera v. Allin, 144 F.3d 719, 723 (11th Cir. 1998), overruled on

other grounds by Jones v. Bock, 549 U.S. 199, 215-16 (2007).

Even though plaintiff is known to this Court as a "three-striker," the Court reviewed the

records of the United States District Court for the Southern, Middle, and Northern Districts of

Alabama to verify that he has three or more in forma pauperis actions or appeals that were

dismissed on the grounds that they were frivolous, malicious, or failed to state a claim upon

which relief can be granted.  From this review the Court discovered plaintiff has seven actions

and appeals that were dismissed based on one of the foregoing reasons, namely, May v.

Culliver, CA No. 10-0121-CG-C (S.D. Ala. Feb. 24, 2012) (failure to state a claim), appeal

dismissed (11th Cir. Sept. 20, 2012) (frivolous); May v. Patterson, CA No. 12-0703-KD-N (S.D.

Ala. Sept. 5, 2013) (malicious), appeal dismissed (11th Cir. June 4, 2014) (frivolous); May v.

Barber, CA No. 13-0237-CB-C (S.D. Ala. July 22, 2013) (malicious), appeal dismissed (11th

Cir. July 24, 2014) (frivolous); May v. Patterson, App. No. 13-14499-C (11th Cir. June 26,

2014) (frivolous) (corresponding district court case is CA No. 11-0675-KD-B (S.D. Ala. Sept.

9, 2013) (dismissed on defendants' summary judgment motion).[1]

---

[1]   In addition to these actions and appeals, this Court's docket reflects twelve other actions filed
by plaintiff as well as another action filed in the Northern District of Alabama.  Based on a
review of all plaintiff's actions, fifteen of plaintiff's actions contain claims based on medical
issues related to plaintiff's head, namely, May v. Sexton, CA No. 97-2881-SCP-RRA; May v.

In order to avoid the dismissal of the present action pursuant to § 1915(g), plaintiff must satisfy the exception to § 1915(g), which requires that at the time of the complaint's filing, he show that he was "under imminent danger of serious physical injury."  See Adbul-Akabar v. McKelvie, 239 F.3d 307, 315 (3d Cir. 2001) ("By using the term 'imminent,' Congress indicated that it wanted to include a safety valve for the 'three strikes' rule to prevent impending harms, not those harms that had already occurred."), cert. denied, 533 U.S. 953 (2001); Brown v. Johnson, 387 F.3d 1344, 1349 (11th Cir. 2004) ("a prisoner must allege a present imminent danger, as opposed to a past danger, to proceed under section 1915(g)"); Medberry v. Butler, 185 F.3d 1189, 1193 (11th Cir. 1999) (the plaintiff must face imminent danger of serious physical injury at the time the complaint is filed, not at a prior time).

In determining if the exception to § 1915(g) is satisfied, "the issue is whether his complaint, as a whole, alleges imminent danger of serious physical injury."  Brown, 387 F.3d at 1350.  To make this showing, a plaintiff "must allege and provide specific fact allegations of ongoing serious physical injury, or a pattern of misconduct evidencing the likelihood of imminent serious physical injury[.]"  Ball v. Allen, CA No. 06-0496-CG-M, 2007 WL 484547, at *1 (S.D. Ala. Feb. 8, 2007) (citation and quotation marks omitted) (unpublished) (Granade, C.J.).  Plaintiff has not done this.

---

Culliver, CA No. 10-0121-CG-C; May v. Patterson, CA No. 11-0675-KD-B; May v. Barber, CA No. 13-0237-CB-C; May v. Barber, CA No. 13-0429-CB-M; May v. Hetzel, CA No. 14-0155-CG-C; May v. Howard, CA No. 13-557-CG-C; May v. Thomas, CA No. 13-0385-CB-M; May v. Hetzel, CA No. 14-155-WS-M; May v. Barber, CA No. 14-0479-WS-N; May v. Stone, CA No. 15-25-KD-B; May v. Andrews, CA No. 15-30-KD-M; May v. Myers, CA No. 15-211-KD-N (present action); May v. Barber, CA No. 15-201-WS-C; and May v. Hetzel, CA No. 15-230-KD-M.  Furthermore, seven of his actions have been dismissed pursuant to 28 U.S.C. § 1915(g), namely, May v. Barber, CA No. 13-0429-CB-M; May v. Howard, CA No. 13-0557-CG-C; May v. Smith, CA No. 14-0171-CG-B; May v. Myers, CA No. 14-0271-KD-B; May v. Thomas, CA No. 13-0385-CB-M; May v. Stone, CA No. 15-0025-KD-B; and May v. Andrews, CA No. 15-30-KD-M.

**II.  Complaint's Allegations.**  (Doc. 1).

On April 17, 2015, the Court received plaintiff's complaint signed on April 16, 2015. (Doc. 1 at 7).  At the beginning of the complaint, plaintiff informs the Court "that this is a refiled action" because Magistrate Judge Milling found that his prior action did not satisfy the exception to § 1915(g).  Plaintiff also advised that in another action, May v. Hetzel, CA No. 14-155-WS-M, Magistrate Judge Milling found that he met the exception.

The Court determines that the unidentified action to which plaintiff refers in which he did not satisfy the exception to § 1915(g) is May v. Andrews, CA No. 15-30-KD-M (S.D. Ala. Apr. 24, 2015).  In this prior action, the defendants are the same as in the present action, and the prior allegations are similar to present allegations, particularly with the respect to the time frame.  The present complaint adds a few non-pertinent flourishes in what appears to be an attempt to satisfy § 1915(g)'s exception.

In the present complaint, plaintiff names as defendants, Bennie Andrews, Health Services Administrator; Walter Myers, Warden; and Ms. McCea, Registered Nurse and Director of Nursing.  (Id. at 5).  The present complaint's allegations are as follows.

On October 14, 2014, plaintiff alleges that he saw Dr. Kouns due to frequent and severe headaches.  (Id. at 8).  Plaintiff told Dr. Kouns that he had a "ventriculoperitoneal shunt malfunction[, which] maybe what is causing his headaches."  (Id.).  Dr. Kouns requested that plaintiff receive a CT scan of his brain.  (Id.).  On October 24, 2014, plaintiff was taken to Atmore Community Hospital for a CT scan. (Id.).

When plaintiff requested the results, defendant Andrews told him that the final impression was: "Postsurgical changes within the brain. Ventriculostomy shunt appears to be in good position and no change in ventricle size is noted. No acute findings are seen."  (Id.).

4

Plaintiff contends that the report does not mention if his "shunt is working as it was designed to work." (Id.). Plaintiff maintains that surgically creating a hole for drainage in his skull and brain is "abusive and degrading and [his] condition is evidence that he is deprived of contemporary standards of decency and a basic human need to safety and medical care, such inhumane conditions should not exist especially being exposed to an excessive risk of harm." (Id.).

On December 19, 2014, plaintiff signed up for sick call, requesting that his shunt ("shunt" or "VP shunt") be replaced because "it has collapsed and does not refill." (Id.). Defendant McCea "asked [him] was he a doctor." (Id.). Plaintiff told "her that a neurosurgeon in his medical reports of July 12, 2010 revealed the shunt has collapsed and does not refill." (Id.). Plaintiff argues that Defendant McCea "attempted to make up a clever trick by acknowledging that [his] [two] CT scans revealed his shunt to be working." (Id.).

To support his claim, plaintiff maintains that his CT scan of February, 2014, "does not mention if the [VP shunt] is working as it was designed to work [because] the only thing the report says pertaining to [his] [VP shunt] is, 'there is a VP shunt 'tube' that enters right superior occipital bone and goes into the right lateral ventricle.'" (Id. at 9-10).[2] Then, the CT scan of

---

[2] This CT scan was included as a part of plaintiff's allegations in May v. Stone, CA 15-25-KD-B (S.D. Ala. pending). In this prior action, plaintiff alleged that after he had a CT scan on February 27, 2014 for frequent and severe headaches, Dr. Stone met with him on March 5, 2015 to discuss the CT scan's findings, which showed, among other things, "[n]o intracranial bleed or mass effect[.]" (Doc. 1 at 8). Later, on March 27, 2014, plaintiff signed up to see the Dr. Stone again, which prompted Dr. Stone to write to plaintiff stating:

> I do not need to see you again re: the matter of a neurologist or neurosurgeon consult related to your shunt. As I explained to you on your CCC (Chronic Care Clinic) visit of March 5, 2014, the CT of your head of February 21, 2014 is the same or even slightly improved as compared to the CT of July 22, 2009. This is my decision at this time.

October 24, 2014, states that his "[v]entriculostomy appears to be in good position."  (Id.).
Plaintiff asserts that neither of these two CT scans stated that his VP "shunt is working as it was
designed to work."  (Id. at 10).

Plaintiff advised "Ms. McCea that she should look in volumes 1 and 2 of his medical file
[because there] were medical issues left unattended to and /or unchecked."  (Id.).  Defendant
McCea continued to look in volume 3 of his medical records, then closed the file, and told him
good-bye.  (Id.).  Plaintiff alleges defendant McCea's responses were "not reasonable" as the
director of nursing and that she breached the standard of care, in that she should have had
plaintiff "promp[t]ly examined by qualified medical personnel, prescribed and/or ordered the
necessary treatment, given that treatment properly and then provided follow up attention as
needed."  (Id.).

On December 19, 2104, plaintiff's grievance was denied by defendant Andrews, who
advised plaintiff that "this discussion regarding [his] malfunctioning shunt is closed."  (Id. at
11).  Plaintiff contends that Defendant Andrews "made a decision . . . that requires[s] a
specialist and/or technician in Neurosurgery attention."  (Id.).

Furthermore, plaintiff identifies his specific claim against defendant Myers as occurring
on October 30, 2014, when defendant Myers failed to install "any form of audit procedures to
check on the performance of it[s] contract[o]r or medical services and allowed to exist[] the
deprivation of needed medical services to [plaintiff]," "which has endangered [plaintiff's] life,
caused him unnecessary pains and made it very difficult for him to do basic things like sleep
normal[ly]."  (Id. at 5, 12).  Defendant Myers is further alleged to have failed to "install any

_____

(Id. at 9).

audit procedures to check on mental health performances [and medical services] . . .[,] allowed to exist the deprivation of mental health care [and adequate medical care], [and] neglected to implement any policies, procedures and/or standard operating procedures designed to assure that [plaintiff] received[] mental health care [and adequate medical care at community standards]." (Id. at 11, 13).

On October 30, 2014, plaintiff alleges that the specific claims against defendants Andrews and McCeas arose "when [each] displayed grossly deficient medical care by relying on an incomplete medical report to deny [plaintiff] medical treatment.  The report [each] relied on to make [a] decision does not reveal that [plaintiff's] VP shunt is working as it [was] designed to work."  (Id. at 5-6).

Near the end of the allegations plaintiff makes broad, conclusory statements without providing a connection to a specific defendant or a time period.  In them, plaintiff states that defendants' "obdurate refusals to ensure that [he] be provided with a course of treatment that was medically appropriate for a VP shunt malfunction was clearly wanton[n]ess due to the duration of [his] shunt malfunction has existed without any appropriate treatment prescribed." (Id. at 12).  He alleges that this total withdrawal of "appropriate medical care" constitutes "an imminent damage of serious physical injury[]" because his shunt has collapsed, does not refill, and can further deteriorate to the extent that it poses "an imminent danger of serious physical injury."  (Id.).  Plaintiff also conclusorily complains of other medical problems for which he has not received care such as AVMs, a seizure disorder, prior stroke, anxiety issues, and depression.  (Id.).  For relief, plaintiff requests compensatory and punitive damages, attorney's fees, and costs taxed to defendants.  (Id. at 7).

**III.  Analysis.**

Due to plaintiff having more than three actions or appeals dismissed as frivolous, malicious, or for failure to state a claim upon which relief can be granted, plaintiff's allegations must satisfy § 1915(g)'s exception, which requires that plaintiff face an "imminent danger of serious physical injury" at the time of filing in order for this action to proceed.  Additionally, an adequate nexus must exist between the "imminent danger of serious physical injury that is fairly traceable to a violation of law that the complaint asserts."  Pettus v. Morgenthau, 554 F.3d 293, 296, 298 (2d Cir. 2009) (finding that the exception to § 1915(g) was not satisfied because the nexus was too attenuated between the defendants associated with plaintiff's conviction and the alleged imminent danger of serious physical injury arising from his incarceration that was based on the denial of medication and being "surrounded by hostile, aggressive, violent inmates who beat, rob, assault, extort, and sexually abuse him").  Here, plaintiff's allegations fail to demonstrate that he was in "imminent danger of serious physical injury" at the time he filed the complaint in April, 2015 in order to avail himself of the exception to § 1915(g).  Cf. Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (a claim must have facial plausibility in order for a claim to be stated as "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

Plaintiff's complaint was filed between April 16, 2015, when he signed the complaint, and April 17, 2015, when the Court received his complaint.  (Id. at 7).  See Houston v. Lack, 487 U.S. 266, 276, 108 S.Ct. 2379, 2385, 101 L.Ed.2d 245 (1988) (a prisoner's "deliver[y of] a pleading to the prison authorities for forwarding to the court clerk" constitutes filing); see Garvey v. Vaughn, 993 F.2d 776, 783 (11th Cir. 1993) (extending Houston to § 1983 actions filed by prisoners).  In this instance, the exact filing date does not need to be determined because the dates that are connected to a named defendant range from October 14, 2014 to

8

December 19, 2014, not near the time of the complaint's filing in April, 2015.  (Doc. 1 at 5-6,

11).  The allegations do not show that a named defendant was involved in any of plaintiff's

claims at the time the complaint was filed in April, 2015.  Cf. Zatler v. Wainwright, 802 F.2d

397, 401 (11th Cir. 1986) (finding that a plaintiff must establish a causal connection between a

defendant's actions, orders, customs, or policies and a deprivation of the plaintiff's

constitutional rights in order to state a claim upon which relief may be granted in a § 1983

action).  Nor do the allegations that are unconnected to a defendant indicate in a clear and

plausible manner that at the time of filing that plaintiff was in imminent danger of a serious

physical injury, as those allegations are vague and conclusory.  Cf. Iqbal, 556 U.S. at 678, 129

S.Ct. at 1950 (holding that "a complaint must contain sufficient factual matter, accepted as true,

to state a claim to relief that is plausible on its face") (citation omitted).  At best, these

unconnected allegations indicate there is a possibility his shunt can deteriorate and eventually

pose "an imminent danger of serious physical injury."  (Id. at 12).

    The undersigned acknowledges that plaintiff's underlying hydrocephalus and VP shunt's

condition have been recognized as a serious medical need.  See May v. Patterson, CA No. 11-

675-KD-B (S.D. Ala.) (recognizing plaintiff's serious medical need), appeal dismissed as

frivolous (11th Cir. June 26, 2014) (holding that the District Court properly granted summary

judgment (Doc. 94). [3] [4]  In affirming the district court's dismissal of plaintiff's action, the

---

[3]     In May v. Patterson, CA No. 11-675-KD-B, the medical defendants furnished with their
Special Report a copy of plaintiff's medical records.  (Doc. 32).  These records show that on
July 12, 2010, Dr. Eugene Quindlen, a neurosurgeon at the University of South Alabama
("USA"), examined plaintiff for increased headaches and ataxia.  (Doc. 32-3 at 19).  He noted
plaintiff's history of having a VP shunt placed in his brain in 1990 for hydrocephalus and of
having a resection of two AVMs in his brain in 1991 and 1992 by Dr. Wink Fisher at UAB.
(Id.).  Earlier, when Dr. Quindlen saw plaintiff in 2008, he could find no particular reason for
his headaches.  (Id.).  He observed that plaintiff had a history of a severe stroke, and was taking
tegretol for seizures.  (Id.).

Eleventh Circuit ruled that plaintiff had "not identified any evidence to refute or even

undermine Dr. Quindlen's medical judgment, or otherwise demonstrate that the Defendant

rendered inadequate or delayed medical care. [Plaintiff] instead has demanded a physician of

his own choosing." (Id. at 7). It further advised plaintiff that "[w]hen an inmate receives

adequate medical care, but desires different modes of treatment, the care provided does not

amount to deliberate indifference." (Id.).

---

The records show that on July 12, 2010, plaintiff was having severe headaches, dizzy spells, and fatigue (id.); his gait was slightly more stiff than before; and Dr. Quindlen could palpate the shunt, which was noted as being collapsed and not refilling. (Id.). His review of the x-rays showed no evidence of edema and no shunt x-rays being performed. (Id.). Dr. Quindlen found that plaintiff was "healthy appearing and in no apparent distress" and did not think that plaintiff had "severe elevated intracranial pressure [, but instead was] having poor shunt function." (Id.). His plan was to obtain shunt films and admit plaintiff to the hospital for a shunt revision. (Id.).

Shortly thereafter, on September 15, 2010, pursuant to the warden's request, the prison doctor extensively reviewed plaintiff's medical records, noting that plaintiff has hydrocephalus with a malfunctioning shunt, which had led to headaches and ataxia. (Doc. 32-3 at 5). The warden wanted the doctor to talk to plaintiff because plaintiff refused to have surgery performed by the neurosurgeon at USA and wanted to have his original surgeon at UAB, who had given him the shunt, to perform the surgery. (Id.). The UAB option was not available. (Id.). Plaintiff refused to have the surgery. (Id. at 30).

On July 24, 2013, a Report and Recommendation was entered granting defendants summary judgment and finding no deliberate indifference to plaintiff's serious medical needs. (Doc. 69). The extensive medical treatment that plaintiff received was recounted. After the District Court adopted the Report and Recommendation and entered Judgment for defendants (Doc. 75), plaintiff appealed.

On June 26, 2014, the Eleventh Circuit Court of Appeals found plaintiff's appeal to be frivolous. (Doc. 94 at 7). The Eleventh Circuit noted that plaintiff's taking issue with Dr. Quindlen's recommendation was the root of the instant action and "cannot sustain a claim of deliberate indifference." (Id.). The Court opined that plaintiff had "not identified any evidence to refute or even undermine Dr. Quindlen's medical judgment, or otherwise demonstrate that the Defendant rendered inadequate or delayed medical care. [Plaintiff] instead has demanded a physician of his own choosing." (Id.).

In a later action, May v. Barber, CA No. 14-479-WS-N (S.D. Ala. Feb. 26, 2105), some of plaintiff's litigation history surrounding medical issues with his head is recounted in the Magistrate Judge's Report and Recommendation recommending the dismissal of plaintiff's action pursuant to 28 U.S.C. § 1915(g). (Doc. 2).

[4] The Court takes judicial notice of its records. Nguyen v. United States, 556 F.3d 1244, 1259 n.7 (11th Cir. 2009).

In this action, plaintiff put the Court on notice that the present action is a re-filing of his prior action that was barred by § 1915(g).  Apparently, plaintiff did not understand the prior case's dismissal pursuant to § 1915(g) because his additional allegations in the present complaint do not address the problem with his prior action, that is, he must show that at the time of the complaint's filing that he was "imminent danger of a serious physical injury" and that he make this showing with specific fact allegations.  Ball, supra, CA No. 06-0496-CG-M, 2007 WL 484547, at *1.  With plaintiff's having failed to make the required showing, the undersigned concludes that plaintiff's allegations do not demonstrate that he was "under imminent danger of serious physical injury" at the time the complaint was filed in April, 2015 and therefore has not satisfied § 1915(g)'s exception.  Brown, 387 F.3d at 1350.

## IV.  Conclusion.

Because plaintiff cannot avail himself of § 1915(g)'s exception, and on account of his failure to pay the $400.00 filing fee at the time he filed this action, plaintiff's action is due to be dismissed without prejudice.  Dupree, 284 F.3d at 1236 (holding that an action must be dismissed without prejudice when an inmate who is subject to 28 U.S.C. 1915(g) does not pay the full filing fee at the time he initiates the action); Vanderberg v. Donaldson, 259 F.3d 1321, 1324 (11th Cir.) (holding that the filing fee paid must be paid by an inmate subject to § 1915(g) at the time an action is commenced), cert. denied, 535 U.S. 976 (2002).  Therefore, it is recommended that this action be dismissed without prejudice pursuant to 28 U.S.C. § 1915(g).

## <u>NOTICE OF RIGHT TO FILE OBJECTIONS</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. ALA. L.R. 72.4.

The parties should note that *under Eleventh Circuit Rule 3-1,* "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on un-objected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

      **DONE** this  7th day  of May, 2015.

                        /s/ Katherine P. Nelson

                        _____

                        UNITED STATES MAGISTRATE JUDGE